# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

William E. Corey and U.S.
Enterprises, Inc.,

                 Plaintiffs,

                            Case No. 1:22-cv-3918-MLB

v.

Rockdale County, et al.,

                 Defendants.

_____/

## **ORDER**

This case involves a decades-long zoning dispute between Plaintiffs and Rockdale County. Since 1999, Plaintiffs have wanted to build a truck stop on property they own in the County. The County does not (and has not since 1999) allowed truck stops, so it has prevented Plaintiffs numerous times from developing the property in line with their wishes. Plaintiffs have now struck a deal to develop a new store on the property but have again been roadblocked by the County, which says the project is—you guessed it—a truck stop. Plaintiffs sued the County and several County officials, saying the County's refusal to allow them to develop

their property as a truck stop is preempted by federal law and violates their constitutional rights.  Defendants moved for judgment on the pleadings.  (Dkt. 19.)  The Court grants that motion.

## I.   Background[1]

Since 1996, Plaintiffs have owned a parcel of land near Interstate 20 in Rockdale County, Georgia.  (Dkt. 1 ¶¶ 12–13.)  The property sits on a heavily traveled, major commercial corridor that contains service stations and convenience stores catering to both automobiles and trucks, including heavy trucks.  (Dkt. 1 ¶ 44.)  Plaintiffs' property is located within one mile of the Dwight D. Eisenhower System of Interstate and Defense Highways (the Interstate System), which is part of the National Network of Roads (the National Network).  (Dkt. 1 ¶ 15.)

In November 1996, the Rockdale County Board of Commissioners (BOC) zoned Plaintiffs' property C-2, which allows general commercial activities including a convenience store with the sale of petroleum products like gas and diesel fuel.  (Dkt. 1 ¶ 18.)  In May 1999, Plaintiffs

---

[1] At this point in the case, the Court accepts Plaintiffs' complaint allegations as true.  *See Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010).

2

asked the County whether a truck stop on the property was an authorized use under the zoning ordinance.  (Dkt. 1 ¶ 19.)  The County said no.  (Dkt. 1 ¶ 20.)  It relied on the ordinance in effect at the time that only permitted specific uses, not including truck stops.  (Dkt. 1 ¶¶ 21, 22.)

Plaintiffs proposed an amendment to the zoning ordinance for consideration by the BOC that would allow truck stops within C-2 zoning.  (Dkt. 1 ¶ 23.)  In the meantime, they filed an application for a permit allowing them to service automobiles and heavy trucks on the property.  (Dkt. 1 ¶ 27.)  The application sought the County's approval for development of a "travel plaza" that would allow the sale of fuel to both automobiles and trucks.  (Dkt. 1 ¶ 28.)  They maintained the project was not a truck stop and met the requirements of the zoning ordinance.  (*Id.*)  The County returned Plaintiffs' application because it did not set forth "the proposed uses of the site."  (Dkt. 1 ¶ 29.)  Plaintiffs filed a mandamus action in state court to compel the County to consider their application.  (Dkt. 1 ¶ 30–31.)  The court denied relief.  (*Id.*)  Plaintiffs had to abort their travel plaza project, including by voiding an agreement with a travel center company, and suffered financial losses.  (Dkt. 1 ¶ 32–33.)

The BOC ultimately amended the zoning ordinance in July 1999 to

allow truck stops, but only in M-2 zoning districts, which are generally located in sparsely developed areas and are limited to "general industrial" uses. (Dkt. 1 ¶ 26.) The new ordinance had the practical effect of preventing any property in Rockdale County from being developed as a truck stop. (Dkt. 1 ¶ 25.) Undeterred, over the next several years, Plaintiffs continued improving and enlarging the property—including by locating it closer to the highway—"[i]n hopes of developing the [p]roperty to its highest and best use, that of a convenience store which sold fuel to automobiles and heavy trucks." (Dkt. 1 ¶¶ 34–35.)

In 2006, the BOC adopted a new comprehensive zoning and development ordinance called the Uniform Development Ordinance (UDO). (Dkt. 1 ¶¶ 36–38.) The UDO includes a section saying: "Truck stops are prohibited. Furthermore, no adjoining or adjacent uses shall be physically connected or used so as to effectively create a truck stop." (Dkt. 1 ¶ 39.) The UDO defines a truck stop as:

> [A]ny building, premises, or land in which or upon which a business, service, or industry involving the maintenance, servicing, storage, or repair of heavy trucks and similar commercial vehicles is conducted or rendered, including the dispensing of motor fuel or other petroleum products primarily for such heavy trucks and similar commercial

vehicles and the sale of accessories or equipment for heavy trucks and similar commercial vehicles, as well as overnight accommodations, showers, overnight customer parking, or restaurant facilities for the use of crews of heavy trucks and similar commercial vehicles.

(Dkt. 1 ¶ 40.)  The UDO sets forth several criteria that must be met for a gas station with a convenience store within the C-2 zoning category, including that "[t]he use shall not be combined with any other use(s) or facility so as to create a truck stop."  (Dkt. 1 ¶ 50.)

In January 2018, Plaintiffs entered into a ground-lease agreement with QuikTrip to construct a "travel plaza" on a 6.7-acre portion of the property, for which Plaintiffs would receive rental payments.  (Dkt. 1 ¶ 42.)  This portion is surrounded by other parcels of the property, all of which are zoned C-2.  (*Id.*)  Plans for the QuikTrip project called for construction of a convenience store with 18 to 20 gasoline dispensers for automobiles, 6 to 8 diesel fuel dispensers for heavy trucks, truck scales, customer parking for 60 to 70 automobiles, and truck parking for 10 trucks.  (Dkt. 1 ¶ 53.)

Plaintiffs contended the proposed construction was not a truck stop because, despite having large turning radius areas and higher canopies to   accommodate   trucks,   the   plaza   was   primarily   designed   to

5

accommodate automobiles and did not have showers or overnight accommodations for truck crews.  (Dkt. 1 ¶ 54.)  They also told the County that the truck parking spaces would be short-term and were not intended for overnight parking.  (Dkt. 1 ¶ 53.)  The County, however, determined the project constituted a truck stop and prohibited its construction.  (Dkt. 1 ¶ 51.)

In May 2018, Plaintiffs' attorney met with the County's Director of Planning and Development.  (Dkt. 1 ¶ 56.)  She said the BOC could not approve Plaintiffs' QuikTrip plans because of the proposed truck scales but thought the BOC "would favorably entertain a text amendment to the UDO creating a 'Travel Plaza' category which would accommodate the QuikTrip store."  (Dkt. 1 ¶ 57.)  Counsel for Plaintiffs and the County worked together to jointly draft such an amendment.  (Dkt. 1 ¶¶ 58–59.)  Despite counsels' joint work—and the planning commission's recommendation—the BOC unanimously rejected the proposal.  (Dkt. 1 ¶ 60–61.)

While the BOC was considering the amendment, Plaintiffs applied for a permit to the County's Planning and Zoning Director to allow QuikTrip to build the proposed travel plaza.  (Dkt. 1 ¶ 63–64.)  In

September 2019, the Director denied Plaintiffs' application on the basis it sought permission to construct a truck stop. (Dkt. 1 ¶ 65.) Plaintiffs appealed that decision to the County's internal appeals board, which upheld the denial. (Dkt. 1 ¶¶ 66–67, 75.) That occurred on December 2, 2019. (*Id.* ¶ 75.) Plaintiffs again sought mandamus in state court. (Dkt. 1 ¶ 76.) The court dismissed most of their claims but held the definition of "truck stop" was impermissibly vague and uncertain under the Georgia Constitution. (Dkt. 1 ¶ 80.) The Georgia Supreme Court reversed. (Dkt. 1 ¶ 83.) On remand, the trial court affirmed the appeals board's decision, concluding it was supported by substantial evidence. (Dkt. 1 ¶ 84.) Plaintiffs also appealed that decision, but the Georgia Supreme Court denied certiorari. (Dkt. 1 ¶ 87; *see U.S. Enterprises, Inc., et al. v. Rockdale County, et al.*, No. S22C1137 (Ga. Feb. 21, 2023).)[2]

In June 2021, the BOC passes a new ordinance that—according to Plaintiff—effectively prohibits all truck stops within the County. (Dkt. 1

---

[2] "[T]he Court may take judicial notice of another court's docket entries and orders for the limited purpose of recognizing the filings and judicial acts they represent." *Endurance Assurance Corp. v. Zoghbi*, 403 F. Supp. 3d 1301, 1304 n.2 (S.D. Fla. 2019) (citation omitted); *see also McDowell Bey v. Vega*, 588 F. App'x 923, 926–27 (11th Cir. 2014) (finding district court properly took judicial notice of entries appearing on state court's docket sheet).

¶ 89.)   Plaintiffs do not allege they applied for a permit under that ordinance.   Instead, Plaintiffs sued Defendants—the County, the BOC members, and the Planning and Development Director—in federal court. Defendants move for judgment on the pleadings.   (Dkt. 19.)

## II.   Standard

"A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   While the complaint need not contain "detailed factual allegations," those allegations must be enough "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.  Discussion

Plaintiffs raise several federal claims against Defendants. In Count I they say they are entitled to injunctive relief preventing the County and the individual defendants from enforcing the truck stop ordinance against them because the County's decision to preclude truck stops conflicts with the Surface Transportation Assistance Act ("STAA").  (Dkt. 1 ¶¶ 94–112.)  In Count II, they raise four claims under the United States Constitution, saying the decision by the County and (certain) individual defendants to block their construction of a truck stop violates their rights under the taking clauses of the Fourth and Fifth Amendments and their rights to procedural due process, substantive due process, and equal protection.  (Dkt. 1 ¶¶ 113–162.)

### A.  Justiciability

Defendants first say the Court need not even reach the merits of Plaintiffs' claims because—for several reasons—they are not justiciable. Specifically, they say Plaintiffs' claims fail because: (1) the STAA does not provide a private right of action and, even if it did, the County's zoning decisions do not fall within the purview of the statute; and (2) Plaintiffs' constitutional claims are barred by the statute of limitations

9

and by res judicata.

### 1.    STAA Claim and Plaintiffs' Right of Action

Defendants say the Court must dismiss Plaintiffs' STAA claim because the statute provides no right private right of action and, even if it did, their claim does not fall within its scope.  (Dkt. 19-1 at 8–13.) Plaintiffs say because they are seeking injunctive relief under the Supremacy Clause, they may assert their claim the STAA preempts the County's zoning ordinance and its denials of their permit applications. (Dkt. 26 at 3–10.)[3]

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (citation omitted).  Rather, the statute must "display[] an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Whether a statutory cause of

---

[3] After the parties briefed Defendants' motion for judgment on the pleadings, Plaintiffs asked for oral argument on the Supremacy Clause issue.  (Dkt. 32.)  The Court concluded "oral argument—only on the question of whether Plaintiffs can bring their Supremacy Clause claim— would be helpful in adjudicating Defendants' motion." (Dkt. 33 at 4.)  The parties submitted briefs detailing their respective positions.  (Dkts. 34; 35.)  The Court relies in part on those briefs in reaching its decision.

action exists is a "question . . . of statutory construction." *Touche Ross*, 442 U.S. at 568.   Specifically, courts must first look at whether the statutory text contains "'rights-creating language.'"   *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1294–95 (11th Cir. 2015) (quoting *Love v. Delta Air Lines*, 310 F.3d 1347, 1352 (11th Cir. 2002)).   "Rights-creating language" is language "explicitly confer[ring] a right directly on a class of persons that include[s] the plaintiff in [a] case," or language identifying "the class for whose especial benefit the statute was enacted."   *Love*, 310 F.3d at 1351–52 (11th Cir. 2002) (quotation marks and citations omitted). Courts may also look to "the statutory structure within which the provision in question is embedded."   *Id.* at 1253.   "If that statutory structure provides a discernible enforcement mechanism," the court "ought not imply a private right of action because '[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'"   *Id.* (quoting *Sandoval*, 532 U.S. at 290). Finally, "if—and *only* if—statutory text and structure have not conclusively resolved whether a private right of action should be implied," courts may "turn to the legislative history and context within which a statute was passed."   *Id.* (emphasis in original).

The STAA prohibits a state from, among other things, "denying to a commercial motor vehicle . . . reasonable access between . . . [the Interstate System] . . . and terminals, facilities for food, fuel, repairs, and rest[.]"  49 U.S.C. § 31114(a)(1)–(2).  Regulations implementing those provisions define reasonable access as "access within 1 road-mile from the National Network using the most reasonable and practicable route available except for specific safety reasons on individual routes."  23 C.F.R. § 658.19.[4]  The STAA also includes an express enforcement provision, which says:

> On the request of the Secretary of Transportation, the Attorney General shall bring a civil action for appropriate injunctive relief to ensure compliance with [the statute]. . . . On a proper showing, the [district] court shall issue a temporary restraining order or preliminary or permanent injunction. An injunction under this section may order a State or person to comply with [the statute].

49 U.S.C. § 31115.

It is quite clear, then, that the STAA does not create a private right of action against a state or local government.  *See Bailiff v. Davenport*

---

[4] The National Network is "[t]he composite of the individual network of highways from each State on which vehicles authorized by the provisions of the STAA are allowed to operate.  The network in each State includes the Interstate System[.]"  23 C.F.R. § 658.5.

*Transp., Inc.*, 2013 WL 6229150, at \*3 (W.D.N.C. Dec. 2, 2013) ("[T]here is no separate private right of action outside the scheme set forth in the STAA."); *see also, e.g.*, *Kornischuk v. Con-Way Cent. Express*, 2003 WL 21977202, at \*3 (S.D. Iowa June 4, 2003).  Plaintiffs do not really contend otherwise.  Indeed, they concede "the absence of an express right of action." (Dkt. 26 at 6.)  Instead, they say their STAA claim actually arises under the Supremacy Clause.  Specifically, they argue they are allowed to "use[] the STAA to litigate preempted local and state regulations in conflict with federal law." (Dkt. 26 at 6.)  Plaintiffs are wrong.

Plaintiffs cannot use the Supremacy Clause itself to raise a freestanding claim that the County's truck stop ordinance is unconstitutional because the Clause does not confer a private right of action. *Armstrong v. Exception Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015).  Plaintiffs say this does not really matter because the Supreme Court has "long recognized" that "if an individual claims federal law immunizes him [or her] from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Id.*  So, federal courts "may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law"

pursuant to the Supremacy Clause. *Id.* at 326. That is a correct statement of law. But it does not apply in every instance of preemption. "The power of federal courts of equity to enjoin unlawful [state or federal] executive action is subject to express and implied statutory limitations." *Id.* at 327. This means the source of a preemption claim must be the statute at issue, rather than the Supremacy Clause or some other judicially created right. *See Newton v. Duke Energy Fla., LLC*, 2016 WL 10564996, at *3 (S.D. Fla. Sept. 21, 2016) (citing *Armstrong*, 575 U.S. at 327–331) ("[T]he only source for a preemption claim is in the statutes alleged to be preempted themselves.").[5] So, if a statute "precludes private enforcement," a plaintiff cannot "by invoking [the Court's] equitable powers, circumvent Congress's exclusion of private enforcement." *Armstrong*, 575 U.S. at 328.

That is precisely the case here. Plaintiffs cannot cloak their STAA arguments in the guise of the Supremacy Clause to assert a private

---

[5] The Supreme Court explained the source of this authority is not the Supremacy Clause itself, which does not provide a private right of action. *Armstrong*, 575 U.S. 320 at 327. Rather, a federal court's "ability to enjoin unconstitutional action by state and federal officers is the creation of courts of equity and reflects a long history of judicial review of illegal executive action, tracing back to England." *Id.*

enforcement action that is precluded by the statute.  This case is on all fours with *Armstrong*.  There, the Supreme Court held private plaintiffs could not use a court's equitable powers to enforce the Medicaid Act because the Act stated the sole remedy for its violation was "the withholding of Medicaid funds by the Secretary of Health and Human Services" and because the Act was judicially unadministrable.  575 U.S. at 328.  As to the first issue, the Court concluded that Congress's "express provision" of enforcement to the Secretary of Health and Human Services "suggests that Congress intended to preclude others" like private litigants from enforcing the Act.  *Id.*  As to the second, the Court explained the Medicaid Act's "mandate that state plans provide for payments that are 'consistent with efficiency, economy, and quality of care,' all the while 'safeguard[ing] against unnecessary utilization of . . . care and services'" was incredibly "broad[]" and unspecific.  *Id.*  Given the breadth of the Act's mandate—and the discretion inherent in determining when a state violates it—"[e]xplicitly conferring enforcement of this judgment-laden standard upon the Secretary alone establishe[d] . . . that Congress 'wanted to make the agency remedy that it provided exclusive'" to achieve uniformity and expertise in decision-

making.  *Id.* (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 292 (2002)).

The same analysis leads to the same conclusion here.  The STAA expressly confers enforcement authority on the Secretary of Transportation, thus precluding enforcement by others.  The STAA's mandate is also broad and unspecific, prohibiting a state from denying to a commercial motor vehicle "reasonable access between" the Interstate System and "terminals, facilities for food, fuel, repairs, and rest[.]"  49 U.S.C. § 31114(a)(1)–(2).  That is where the discretion starts and ends.  Once the Secretary decides a state or local government has violated the statute, "the Attorney General *shall* bring a civil action for appropriate injunctive relief to ensure compliance with [the statute]."  *Id.* (emphasis added).  Like with the Medicaid Act, Congress's decision to authorize the pertinent cabinet-level secretary—and *only* that secretary—to judge whether a state or local government's conduct violates the STAA ensures uniformity and expertise in enforcing the statute.  If every private plaintiff who owns a stretch of land purportedly within the STAA's purview could individually adjudicate "reasonable access," courts would inevitably create a patchwork of legality.  That is precisely what the statute intends to avoid by giving exclusive enforcement power to the

Secretary of Transportation. *See Armstrong*, 575 U.S. at 329 (noting exclusive enforcement mechanism in statute intended to avoid the "risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action") (citation omitted).

In arguing otherwise, Plaintiffs cite several cases that are either distinguishable, were decided before *Armstrong*, or just plain got it wrong. (Dkts. 26 at 6–10; 34.) First, their reliance on cases holding that preemption claims give federal courts jurisdiction are misplaced because the question is not whether the Court has jurisdiction over preemption issues but whether Plaintiffs have the right to bring such a claim. (Dkts. 26 at 6–7; 34 at 4–5.) And even if some of Plaintiffs' cases implicitly held that a plaintiff could assert a private right of action under the Supremacy Clause—under the STAA or otherwise—those cases were decided before *Armstrong*, which now plainly forecloses that possibility. (Dkts. 26 at 8; 34 at 4–5.)

Plaintiffs cite only one case post-*Armstrong* in which a court has allowed a private plaintiff to bring a claim arguing the STAA preempts local government conduct. (Dkt. 26 at 7 (citing *Commer. Warehouse*

17

*Leasing, LLC v. Thomas*, 2019 WL 187872 (W.D. Ky. Jan. 14, 2019).)  In finding a private right of action, the *Thomas* court said a private plaintiff's challenge to a state's purported violation of the STAA "arose under the Supremacy Clause."  *Id.*  The court concluded this means the STAA allows a private right of action.  *Id.*  But a plaintiff's right to vindicate a constitutional injury (specifically, that he or she was injured by an unconstitutional statute, regulation, or ordinance) is different from his or her ability to assert a *statutory* right.  The STAA plainly does not provide private plaintiffs a statutory right to recover.  And the *Thomas* court's conclusion that the plaintiffs could force an otherwise improper STAA claim by asserting it under the Supremacy Clause is directly contrary to *Armstrong*.  Indeed, the *Thomas* court says nothing about *Armstrong* at all.  This Court refuses to follow that decision.

Plaintiffs cannot bring a statutory claim that Defendants violated the STAA.  Nor can they assert under the Supremacy Clause—or in equity—that the statute preempts Defendants' conduct.  Defendants are entitled to judgment as a matter of law on those claims.[6]

---

[6] Defendants say, even if Plaintiffs could assert their STAA claim, it still fails because the County's zoning ordinance does not fall within the purview of the STAA.  (Dkt. 19-1 at 10.)  Specifically, they contend in

## 2.    Statute of Limitations

Defendants say Plaintiffs' constitutional claims in Count II are barred by the two-year statute of limitations.  (Dkt. 19-1 at 12.)  They argue Plaintiffs' claim is that Defendants have prevented them from building a truck stop on their property in violation of the Fifth and Fourth Amendments, procedural and substantive due process, and equal protection.  (*Id.*)  Defendants argue that, because that prohibition has been in place since at least 1999, Plaintiffs' claims are long-since time-barred.  (Dkt. 19-1 at 12–13.)  Plaintiffs say the statute of limitations could not possibly have run as to their claims involving the denial of their application under the 2006 UDO because (although the County denied

---

"other cases alleging violations of the STAA, there is an existing terminal or other facility of which the local ordinance allegedly precludes access or use" rather than a local government's prohibition of the development of a new facility.  (Dkt. 19-1 at 10–11.)  The Court agrees.  The STAA prohibits a state or local government from "denying . . . reasonable access" between the Interstate System and particular services within a mile of the National Network.  49 U.S.C. § 31114(a)(1)–(2).  But there are plenty of areas within a mile from the National Network that are not truck-accessible.  It would be absurd to say the STAA compels state or local governments to allow the development of any of the STAA's listed facilities in those areas.  The STAA simply "does not require [the County] to grant unfettered access to commercial motor vehicles within the [County]."  *Garza v. City of La Porte*, 160 F. Supp. 3d 986, 1004 (S.D. Tex. 2016).  So, even if Plaintiffs could bring their STAA claim, it would still fail.

their application in September 2019 and the BOA denied their appeal in December 2019) the state court did not enter a final order in that matter until 2022. (Dkt. 26 at 10.) Plaintiffs also say their claims under the County's "new total prohibition" on truck stops are not barred because the County did not enact that ordinance until June 21, 2021. (Dkt. 26 at 12.)

Plaintiffs assert their constitutional claims under Section 1983 of Title 42. (Dkt. 1 ¶ 113.) That statute does not have a statute of limitations. In adjudicating § 1983 claims, courts are to apply "the most appropriate and analogous state statute of limitations." *Mullinax v. McElhenny*, 817 F.2d 711, 716 n.2 (11th Cir. 1987) (citing *Burnett v. Grattan*, 468 U.S. 42, 47–48 (1984)). And the Supreme Court has long instructed that the state's limitations period governing personal injury claims is the one applicable to § 1983 claims. *Mullinax*, 817 F.2d 7at 716 n.2; *see also McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) ("All constitutional claims brought under § 1983 are . . . subject to the statute of limitations governing personal injury actions in the state where . . . the action has been brought."). In Georgia, that limitations period is two years. O.C.G.A. § 9-3-33; *see also Mullinax*, 817 F.2d at 716 n.2 ("[T]he

proper limitations period for all [§] 1983 actions in Georgia is the two-year limitations period set forth in O.C.G.A. § 9-3-33.").  A § 1983 claim accrues, and the limitations period begins to run, "when the injured party knew or should have known both (1) that he [or she] has suffered the injury that forms the basis of his [or her] complaint and (2) who inflicted that injury."  *Ashcroft v. Randel*, 391 F. Supp. 2d 1214, 1219 (N.D. Ga. 2005) (citing *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003)).

Contrary to Defendants' characterizations, Plaintiffs do not challenge an abstract truck stop restriction that "has been in place since at least 1999" in various ways.  (Dkt. 19-1 at 12.)  Rather, their claims concern discrete decisions made by the County to pass a new, more expansive truck stop prohibition and to bar a specific development project.  As the Georgia Supreme Court already explained, "[a]lthough [Plaintiffs'] 1999 lawsuit and this case both relate to their seeking a permit to construct a facility on their same property, the two lawsuits are based on different sets of operative facts and different alleged wrongs." *Rockdale Cty. v. U.S. Enterprises, Inc.*, 865 S.E.2d 135, 142 (Ga. 2021). So, the Court analyzes the statute of limitations under that framework.

As stated, the County passed its new truck stop prohibition in June

21

2021.  But, because Plaintiffs have not applied for a permit under the new ordinance, the County has not enforced it against them.  So, the limitations period has not even begun to run on that claim.  *See Hillcrest Prop., LLC v. Pasco Cty.*, 754 F.3d 1279, 1282 (11th Cir. 2014) ("[T]he harm inflicted by the statute . . . does not occur until the statute is enforced—in other words, until it is applied.") (citation omitted).  This is a separate question, however, from whether Plaintiffs even have standing to bring their claim over the new ordinance.  They have not applied for a permit under that ordinance.  Nor have they alleged they plan to do so in the near future.  Plaintiffs do not face imminent enforcement of the ordinance and they cannot challenge it now.  *See Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1204 (11th Cir. 2021) (plaintiff lacked standing to bring claim over recent legislation that "would" cause injury if enforced when threat of enforcement was not imminent).  The Court thus dismisses any claims under the 2021 ordinance.[7]

---

[7] Plaintiffs argue they did not need to file a new application under the current ordinance because doing so would be futile.  (Dkt. 26 at 13.)  But the futility exception applies only in the context of administrative exhaustion.  *See Brantley Cty. Dev. Partners, LLC v. Brantley Cty., Ga.*, 559 F. Supp. 3d 1345, 1362 (S.D. Ga. 2021) ("Georgia courts recognize a

The County did, however, refuse to allow Plaintiffs' QuikTrip development project under the old ordinance—the 2006 UDO. Plaintiffs say they could not have brought their constitutional claims about that ordinance until conclusion of the state court litigation (including appeals) over the County's denial of its application. (Dkt. 26 at 11.) The only authority they cite for this proposition has been overruled. (*Id.* (citing *New Port Largo, Inc. v. Monroe Cty.*, 985 F.2d 1488 (11th Cir. 1993).)[8] Their takings claim certainly became ripe when the County denied their application in September 2019 or when the BOA denied their appeal in December 2019. *See Williamson Cty. Regional Planning Comm'n v.*

---

futility exception to its administrative exhaustion requirements where further administrative review would result in another decision on the same issue by the same body.") The exception does not confer standing, nor does it toll the statute of limitations. *See Saline Assocs. No. 1 Ltd. P'ship v. United States*, 766 F. App'x 962, 970 (Fed. Cir. 2019) ("Although futility may be rationally based, it does not overcome the jurisdictional weight of the statute of limitations in dealings with the government."); *Webb v. Ind. Nat'l Bank*, 931 F.2d 434, 437 (7th Cir. 1991) ("[I]f it obviously would be futile to make a future application for the job for which he has just been turned down, the plaintiff cannot delay suit and use those futile applications to delay the running of the statutory period indefinitely.").

[8] As discussed in detail below, the Supreme Court recently held (soon before Plaintiffs filed suit in state court) that a plaintiff does not have to exhaust state court procedures before filing a takings claim. *See Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162, 2167–68 (2019). *Knick* overruled *New Port Largo*.

*Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985) ("a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue"). And the Supreme Court has held plaintiffs do *not* have to exhaust state remedies to raise a takings claim. *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162, 2167–68 (2019). Under *Knick*, a plaintiff can bring his or her takings claim "when the government takes his [or her] property without paying for it." *Id.* at 1267. Again, this means Plaintiffs' takings claim ripened either when the County passed the UDO in 2006 or when the County denied their permit application in September 2019 or (at the very latest) when the BOA denied the appeal in December 2019. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1016 (1992) (explaining taking occurs when government denies owner economically viable use of his or her land).

Plaintiffs could have asserted their other constitutional claims by at least 2019 as well. *See Hillcrest Property, LLC v. Pasco Cty.*, 754 F.3d 1279, 1283 (11th Cir. 2014) (substantive due process claim alleging deprivation of property accrues at time ordinance purportedly devaluing

property is passed); *Zinermon v. Burch*, 494 U.S. 113, 126 (1990) (procedural due process claim accrues when state actor fails to provide due process or provides complained-of deficient process); *Russ v. Jackson Cty. Sch. Bd.*, 530 F. Supp. 3d 1074, 1081 (S.D. Fla. Mar. 30, 2021) ("Equal-Protection claims accrue 'whenever an individual is directly and adversely affected by the discriminatory practices of the defendant.'") (quoting *U.S. v. Ga. Power*, 474 F.2d 906, 925 (5th Cir. 1973)).

Plaintiffs did not file their constitutional claims within the applicable two-year statute of limitations, and they are now time-barred.

### 3. Res Judicata

Defendants contend that, because "[r]estrictions against truck stops have continued through multiple amendments to the Rockdale County ordinances and have been subject of previous legal challenges by Plaintiffs," Plaintiffs' constitutional claims and claim under the STAA are barred by res judicata. (Dkt. 19-1 at 23.) Plaintiffs counter that they specifically reserved their federal claims by disclaiming them in the state litigation. (Dkt. 26 at 22–23.) They could not first bring their claims in federal court, they say, because they had to obtain a final order "evidencing the [zoning] decision by the governmental body" before a

federal court could entertain their case.   (Dkt. 26 at 25.)   Finally, Plaintiffs say that, even if they did not properly reserve their federal claims in the state case, res judicata does not apply because they allege different wrongs in this litigation.   (Dkt. 26 at 24–25.)   The Court disagrees.

In deciding whether a prior Georgia state court judgment bars a later action in federal court, the Court applies Georgia law.  *Burr & Forman v. Blair*, 470 F.3d 1019, 1030 (11th Cir. 2006).  "In Georgia, 'the doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action.'"  *Sheba Ethiopian Restaurant, Inc. v. DeKalb Cty., Ga.*, 820 F. App'x 889, 895 (11th Cir. 2020) (quoting *James v. Intown Centures, L.L.C.*, 725 S.E.2d 213, 215 (Ga. 2012)).[9]  "Three prerequisites must be met before res judicata will apply: (1) identity of the cause of action; (2) identity of the parties or their privies; and (3) previous adjudication on the merits by a

---

[9] The Court recognizes *Sheba* and other cases cited herein are unpublished and not binding.  The Court cites them nevertheless as instructive.  *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

court of competent jurisdiction." *James*, 725 S.E.2d at 215.  A cause of action is "'the entire set of facts which give rise to an enforceable claim with special attention given to the wrong alleged.'" *Sheba*, 820 F. App'x at 896 (quoting *Coen v. CDC Software Corp.*, 816 S.E.2d 670, 675 (Ga. 2018)).  "Where some of the operative facts 'are different,' the second suit is not founded upon the same cause of action as the first, despite the possibility that the two cases arose from the same transaction and contain similar subject matter." *Sheba*, 820 F. App'x at 896 (citation omitted).

The parties do not dispute that the application of res judicata turns only on the identity of the cause of action and whether the Rockdale County Superior Court adjudicated the prior litigation on the merits. Plaintiffs say this litigation does not present the same cause of action because "[t]he former action in this case was an administrative appeal in which the wrong alleged was that the truck stop ordinance by its terms did not bar the proposed QuikTrip" and "[t]he present action alleges the wrong that the total prohibition of a truck stop violates the pre-emption of the STAA under the Supremacy Clause." (Dkt. 26 at 25.)  Relatedly, Plaintiffs contend res judicata does not apply because they purportedly

27

reserved their federal claims in the state litigation under *Jennings v. Caddo Parish School Bd.*, 531 F.2d 1331 (5th Cir. 1976), and could not bring this case until the state litigation ended.  (Dkt. 26 at 22–23.)

A so-called *Jennings* reservation resolves a "dilemma" of competing requirements that used to arise when a plaintiff raised a takings claim. *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1302–03 (11th Cir. 1992).  On one hand, a plaintiff had to "pursue any available state court remedies that might lead to just compensation before bringing suit in federal court under section 1983."  *Id.* at 1303.  On the other, "if a litigant [brought] a takings claim under the relevant state procedure, he [or she] ran the risk of being barred from returning to federal court" due to res judicata "even though he [or she] would [have] prefer[red] to reserve the federal claim for resolution . . . in federal court." *Id. Jennings* provided a procedure by which a plaintiff could reserve his or her takings claim for adjudication in federal court while exhausting his or her state court remedies.  *Id.* at 1303.

As a threshold matter, Plaintiffs' *Jennings* argument could not possibly apply to any of their constitutional claims other than their takings claim since that doctrine arose to address only that claim.  And—

even regarding the takings claim—it is not clear that *Jennings* survives after *Knick*.  Indeed, thanks to *Knick*, the "dilemma" that *Jennings* was designed to resolve no longer exists because—as already explained—a plaintiff no longer needs to exhaust state court remedies before bringing a takings claim in federal court.  *Knick*, 139 S. Ct. at 2168.  Since Plaintiffs were not forced to proceed in state court initially and could have filed their takings claim (and all their other claims) in federal court from the beginning, any *Jennings* reservation was ineffective.  *See Fields*, 953 F.2d at 1306 ("a *Jennings* reservation may be effective only in circumstances where it may reasonably be said that the litigant 'involuntarily' pursued state court proceedings").

Plaintiffs say they had to file in state court first—and finish with all proceedings in the state system—because their claims would not be ripe until they received a "final order evidencing the decision by the governmental body." (Dkt. 26 at 24 (citing *Eide v. Sarasota Cty.*, 908 F.2d 716, 720–21 (11th Cir. 1990).)  But the "final decision" that was required before Plaintiffs could file suit in federal court was a final decision by the *County*—not by the state court system. *See Williamson* 473 U.S. at 186 ("[A] claim that the application of government regulations effects a taking

of a property interest is not ripe until *the government entity charged with implementing the regulations* has reached a final decision regarding the application of the regulations to the property at issue.") (emphasis added).[10]   As the Court already explained, the County made its final decision that purportedly resulted in the taking of Plaintiffs' property either at the time it passed the UDO or when it denied Plaintiffs' permit application.   Plaintiffs thus could have raised all their federal claims (aside from their failed claim over the 2021 ordinance) in the earlier litigation and are now barred from doing so.  *See Dinkins v. Leavitt*, 2008 WL 447503, at *9 (N.D. Ga. Feb. 13, 2008) (dismissing claims that could have been raised in prior litigation).

To avoid this result, Plaintiffs argue they are raising a different "alleged wrong" from the state case.  (Dkt. 26 at 26.)  Specifically, they say their challenge in the state litigation to the "administrative" decision by the County is different from their challenge in this litigation that the

---

[10] *Knick* overruled *Williamson*'s separate requirement that a plaintiff exhaust state court remedies prior to raising a takings claim in federal court, but it did not overrule the "final decision" requirement, which applies only to the ultimate decision by the pertinent local government. *Knick*, 139 S. Ct. at 2174 (noting *Williamson* court could have resolved case simply by holding local government had not reached a final decision on plaintiff's proposal).

STAA preempts the County's 2021 ordinance. (*Id.*) This misses the point. Regardless of whether Plaintiffs could have raised their claims regarding the 2021 ordinance in the state litigation, they certainly could have raised their other federal claims. Those other claims are clearly barred by res judicata. Because Plaintiffs could have brought them before, they cannot now shoehorn them into this litigation by bringing purportedly new claims over the 2021 ordinance (which the Court already concluded fail for lack of standing).

## B.   Merits

Defendants say that, even if Plaintiffs could bring their claims, they still fail to plead the necessary elements. Specifically, Defendants contend Plaintiffs do not plead the loss necessary to maintain a takings claim; Plaintiffs' procedural due process claims fail because they could— and did—seek state court review of the County's decisions; Plaintiffs fail to adequately plead the elements of their equal protection and substantive due process claims; and the BOC Defendants are immune from suit. Finally, Defendants ask the Court to dismiss Plaintiffs' claim for attorneys' fees as derivative of their other failed claims.

### 1.   Takings

Defendants contend say that, even if Plaintiffs' takings claim was not barred by the statute of limitations and res judicata, it still fails because they do not allege "loss of all beneficial or productive use of the [p]roperty." (Dkt. 19-1 at 15.) Plaintiffs say the "economic impact" of the County's refusal to allow their desired development has "deprive[d] [them] of their 'reasonable investment-backed expectations,'" and so their takings claim survives. (Dkt. 26 at 14.) Plaintiffs are wrong.

To properly plead a regulatory taking, a plaintiff must allege "that: (1) government action has denied him 'all economically beneficial or productive use of his property' (making it 'worthless') and (2) he cannot obtain just compensation under state procedures or that available state procedures are 'inadequate.'" *Etherton v. City of Rainsville*, 662 F. App'x 656, 660–61 (11th Cir. 2016) (quoting *Agripost, Inc. v. Miami-Dade Cty.*, 195 F.3d 1225, 1231 (11th Cir. 1999)).

Plaintiffs complain they have never been allowed to develop their property as a truck stop. They couch this as a "total prohibition of the use of the property to service heavy trucks." (Dkt. 26 at 14-15.) But a "total prohibition" to do one thing hardly constitutes the denial of all beneficial or productive use. Indeed, Plaintiffs do not allege they have

ever submitted a plan to the County to develop their property as anything but a truck stop.  For example, they do not allege the County has disallowed them from developing the property as a convenience store, a gas station (that does not constitute a truck stop under the pertinent ordinances), or any other business.  While Plaintiffs may think a truck stop is the *most* economically beneficial use of their property, they do not allege it is the *only* viable use.

Plaintiffs argue they do not have to allege that the County's zoning decision rendered their property useless to state a claim.  Instead, they say, they need only allege that the County has deprived them of their "reasonable investment-backed expectations." (Dkt. 26 at 14.)  But initial zoning decisions do not typically constitute a taking because they "generally do not affect *existing* uses of real property." *Penn Centr. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 125 (1978) (emphasis added). Plaintiffs point to no case law suggesting a county ordinance prohibiting only a single use frustrates investment-backed expectations such that it constitutes a taking.  Nor could they. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 498 (1987) (noting, in holding that regulating or prohibiting certain uses is not a taking, that "[m]any zoning

ordinances place limits on the property owner's right to make profitable use of some segments of his [or her] property"). Plaintiffs' takings claim fails.

### 2.   Procedural Due Process

Defendants contend Plaintiffs' procedural due process claim fails because they could—and did—avail themselves of state court review of the County's permitting decision. (Dkt. 19-1 at 15.) Plaintiffs say they properly alleged the County's hearing process was constitutionally defective for multiple reasons. (Dkt. 26 at 17.) So, they say, they were deprived of procedural due process. (*Id.*) Plaintiffs are wrong again.

To plead a procedural due process claim, a plaintiff must allege: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Regardless of any alleged deficiencies in a local government's decision-making process, a plaintiff cannot maintain a procedural due process claim if it may avail itself of adequate state remedies to rectify those deficiencies. *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000). The Eleventh Circuit has recognized that a plaintiff's ability to obtain state court review provides

an adequate remedy. *Horton v. Bd. of Cty. Comm'rs of Flagler Cty.*, 202 F.3d 1297, 1302 (11th Cir. 2000). As does the opportunity to seek review of lower court decisions in state appellate courts and, ultimately, review by the United States Supreme Court. *Sibley v. Lando*, 437 F.3d 1067, 1074 (11th Cir. 2005).

Even if the County's decision-making process over Plaintiffs' permit application was deficient, they could have sought—and did seek—review in the state court system. Plaintiffs had a full and fair opportunity to litigate, and they brought their case all the way to the Georgia Supreme Court. Georgia's certiorari process is an effective remedy for challenging the constitutionality of zoning decisions. *Sheba*, 820 F. App'x at 899. So, Plaintiffs were not deprived of procedural due process.

### 3.   Equal Protection

Defendants say Plaintiffs' equal protection claim fails because they do not allege a similarly situated comparator. (Dkt. 19-1 at 18.) Plaintiffs counter that exhibits attached to their complaint show "[o]ther service stations and convenience stores, some of which are on [the same road as the proposed QuikTrip project], service and fuel heavy trucks." (Dkt. 26 at 21.) Defendants point out that the other stores Plaintiffs identify have

35

substantial differences from the proposed QuikTrip project and thus are not prima facie identical as required to state an equal protection claim. (Dkt. 29 at 12.)  Defendants are right.

A plaintiff may raise a "class of one" equal protection claim "'where the plaintiff alleges that [he or] she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006) (quoting *Village of Westbrook v. Olech*, 528 U.S. 562, 564 (2000)).  In the context of zoning decisions, this means the plaintiff must allege "there were developments [that] were similarly situated to the [plaintiff's] proposed development, because '[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause.'" *Campbell*, 434 F.3d at 1314 (citation omitted). "[T]o be considered 'similarly situated,' comparators must be prima facie identical in all relevant respects,'" and "projects which seek different types of variances are not similarly situated." *Id.* (citations omitted).  It is difficult for a plaintiff to maintain a class of one equal protection claim where the defendant exercises its discretionary authority "based on subjective, individualized determinations." *Engquist v. Ore. Dep't of*

*Agric.*, 553 U.S. 591, 602 (2008).  This is particularly true where the challenged decision involved "varied decisionmaking criteria" and a "variegated set of factors."  *Leib v. Hillsborough Cty. Public Transp. Com'n*, 558 F.3d 1301, 1307 (11th Cir. 2009).

Defendants' ordinances have multiple factors applicable to the type of use for which Plaintiffs applied.  And while Plaintiffs claim there are comparators, the only similarities they identify are zoning designations and that other stores on the same road as their property "service and fuel heavy trucks."  (Dkt. 26 at 21.)  They do not allege those other stores are truck stops as defined in the ordinances.  Nor do they even allege the other stores are similar in all relevant respects to the proposed QuikTrip project.  Plaintiffs' equal protection claim fails.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1203–04 (11th Cir. 2007) (equal protection claim failed where complaint showed alleged comparator was not similarly situated such that there was rational ground for difference in treatment).

### 4.   Substantive Due Process

Defendants say the Eleventh Circuit has rejected "federal substantive due process claims arising out of circumstances presented by this case"—that is, as-applied challenges to a zoning ordinance.  (Dkt. 19-

1 at 20.)  Plaintiffs' response is hard to follow.[11]  They argue the "absolute prohibition of a truck stop was a legislative act" that gives rise to a substantive due process claim.  (Dkt. 26 at 16.)  That is a reference to the 2021 ordinance, and the Court already found they do not have standing to assert any such claim.  Plaintiffs may also be arguing the denial of their application under the 2006 UDO violated their substantive due process rights.  (Dkt. 27 at 16-17 (reference to application of ordinance).) But any such claim is expressly foreclosed by Eleventh Circuit precedent. *See Hillcrest Prop., LLP v. Pasco Cty.*, 915 F.3d 1292, 1302 (11th Cir. 2019) ("an as-applied challenge to a land-use statute never gives rise to a substantive-due-process claim when the sole basis for the challenge is allegedly arbitrary behavior that does not infringe on a fundamental right").  Whichever avenue Plaintiffs seek to pursue, they cannot maintain their substantive due process claim.[12]

---

[11] To the extent the Court misapprehends Plaintiffs' claim, Plaintiffs bear the responsibility.

[12] As part of their argument, Plaintiffs allege the (unidentified) ordinance was not reasonably related to a legitimate public interest.  (Dkt. 26 at 17.)  Without deciding the issue, the Court doubts Plaintiffs have sufficiently alleged facts that overcome the presumption that there is a rational relationship between the ordinance and a legitimate governmental purpose.  *See Armor v. City of Indianapolis, Ind.*, 132 S. Ct. 2073, 2080 (2012) ("Rational basis review requires deference to

## 5.   Immunity

Defendants Nesbit, Washington, and Williams—all members of the BOC—say they enjoy qualified and legislative immunity from Plaintiffs' claims.  (Dkt. 19-1 at 21–23.)  Plaintiffs say the BOC Defendants are not immune because they violated clearly established rights and because Plaintiffs seek injunctive relief.  (Dkt. 26 at 20–22.)  Again, the Court disagrees.

### a.   Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  For a law to be clearly established at the time of the

---

reasonable underlying legislative judgments.").  They point to general facts about the property's size, location, and the surrounding area to say the ordinance is arbitrary and capricious.  (Dkt. 26 at 17.)  But Defendants identified several rationales for prohibiting truck stops in areas zoned C-2.  (Dkt. 14-8.)  To definitively answer this question, however, the Court would need to determine whether the evidence cited by Defendants and attached to their answer is central to the complaint such that the Court can consider their contents.  Because the Court concludes Plaintiffs' claim otherwise fails, it declines to do so.

purported violation, "[c]ase law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he [or she] is doing violates federal law." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000).  To be entitled to qualified immunity, an official must establish he or she acted within the scope of his or her discretionary authority. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

Plaintiffs' only allegations against the BOC Defendants pertain to their actions in voting on County ordinances or otherwise making zoning decisions.  (Dkt. 1 ¶¶ 17, 24–25, 36–38, 60–61, 89–90.)  These are discretionary actions. *See SP Frederica, LLC v. Glynn Cty.*, 173 F. Supp. 3d 1362, 1376 (S.D. Ga. 2016) ("The members of the Board of Commissioners, in passing the zoning regulations at issue, were acting squarely within the realm of their legitimate job-related functions."). And Plaintiffs point to no cases clearly establishing that the BOC Defendants' actions in adopting the zoning decisions violates statutory or constitutional law.  They merely argue that "[i]t is clearly established by the STAA that a total prohibition [on truck stops] does not amount to a

matter of discretion for which qualified immunity is applicable." (Dkt. 26 at 23.)   Again, however, the STAA requires only reasonable access as defined by the Secretary of Transportation.   And Plaintiffs point to no cases clearly putting the BOC Defendants on notice that the specific prohibitions they enacted violated federal law.   The dearth of similar cases decided by the Eleventh Circuit or the Supreme Court entitles the BOC Defendants to qualified immunity.

### b.    Legislative Immunity

State and local legislators are entitled to legislative immunity in all actions they take "in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998) (citation omitted).   The "acts of voting for an ordinance [are] . . . quintessentially legislative." *Id.*   The BOC Defendants were performing quintessential legislative functions in passing the pertinent ordinances, so they are protected from Plaintiffs' claims over that conduct.

In arguing otherwise, Plaintiffs point out that legislative immunity "'does not bar suits for declaratory or injunctive relief brought against county officers in their individual capacities.'" (Dkt. 26 at 22 (quoting *Brantley Cty.*, 559 F. Supp. 3d at 1369).)   True.   But only in the context

of administrative *enforcement* of an ordinance—not to legislative acts taken in passing the ordinance.  The BOC Defendants did not enforce the ordinance, so they are still protected.

### 6.   Attorneys' Fees

Because the Court dismisses Plaintiffs' substantive claims, it also dismisses their derivative claim for attorneys' fees.  *See Estes v. Tuscaloosa City, Ala.*, 696 F.2d 898, 901 (11th Cir. 1983) ("Section 1988 authorizes attorneys' fees as part of a remedy for violations of civil rights statutes; it does not create an independent right of action."); *see also Jackson v. Cty. of Paulding, Ga.*, 2018 WL 10582211, at *6 n.5 (N.D. Ga. Oct. 31, 2018) ("To the extent that Plaintiff seeks punitive damages under § 1983 or attorneys' fees under 42 U.S.C. § 1988, those claims fail in the absence of any viable underlying claim.").

## IV.  Conclusion

The Court **GRANTS** Defendants' Motion for Judgment on the Pleadings (Dkt. 19).

**SO ORDERED** this 28th day of August, 2023.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE